## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant The Moore Law Group, APC, ("TMLG") seeks to compel arbitration of the claims asserted by Plaintiff Allison Estrada ("Plaintiff") regarding alleged abusive, deceptive, and unfair practices in connection with the collection of Plaintiff's Citibank credit card account ending in 7204 issued under the name Allison Alvarez (the "Account").

Plaintiff alleges TMLG knew or should have known that the debt associated with the credit account in question was the result of fraud, TMLG failed to review notes related to the Account, and attempts to collect on the debt associated with the Account by TMLG constituted misleading, unfair, and unconscionable actions under the FDCPA and Rosenthal.

Plaintiff has initiated a concurrent arbitration with American Arbitration Association (AAA) against Citibank, N.A. for claims arising out of the same facts and circumstances as those alleged in the Complaint filed in this action against TMLG.

Regardless of their merits (or lack thereof), in accordance with and pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), and the terms of the arbitration agreement (the "Arbitration Agreement") contained in the credit card agreement that governs the Account, Plaintiff's claims against TMLG must be

resolved in the pending arbitration, not split into an arbitration against Citibank, N.A. and a lawsuit against its attorneys.

## II. <u>FACTUAL BACKGROUND</u>

### A. <u>Plaintiff's Account And Concurrent Arbitration Demand By Plaintiff Against Citibank, N.A.</u>

Plaintiff's allegations stem from attempts by TMLG to collect on debt related to Plaintiff's Citibank, N.A. credit account currently ending in 7204 (the "Account"). On or about November 3, 2021, the Account was referred to TMLG as attorneys for Citibank, N.A. for purposes of collecting the outstanding balance. (Declaration of Counsel for Defendant The Moore Law Group, APC ("Defendant's Decl."), ¶ 2.) On or about November 22, 2021, TMLG sent a Demand Letter to Plaintiff that complied with the requirements of 15 USC Section 1692g. (Defendant's Decl. ¶ 4.) Having received no contact from Plaintiff,  and pursuant to 15 USC Section 1692g which allowed TMLG to assume that the debt was valid, on or about January 5, 2022, TMLG proceeded to file suit against Plaintiff under the name Allison M Alvarez in Los Angeles County Superior Court in case number 22CHLC00190 styled as Citibank, N.A. vs. Allison M Alvarez. (Defendant's Decl. ¶ 5, Ex. 3.)

On or about March 9, 2022, Plaintiff filed suit against TMLG and Trans Union LLC in United States District Court, Central District of California as Case No. 2:22-cv-01594-ODW-AFM, styled as Allison Estrada v. The Moore Law Group, APC; and

Trans Union LLC. (Defendant's Decl. ¶ 6.) On or about March 10, 2022, Plaintiff filed her Demand in Arbitration against Citibank, N.A. with American Arbitration Association, under AAA case number 01-22-0001-0525 (the "Demand"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., the California Consumer Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785 et seq., and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ Code § 1788 et seq., against Citibank relating to Plaintiff's credit account. (Defendant's Decl. ¶ 8, Ex.1.) The underlying factual claims in Plaintiff's Complaint are substantially identical to those raised in its Demand, not separable from the allegations against Citibank, N.A., and are inherently and fundamentally dependent on the actions taken by Citibank, N.A. such that but for the alleged actions by Citibank, N.A., the allegations against TMLG could not be true. Plaintiff's Demand in Arbitration is predicated on and includes as an attachment a Citibank N.A. Card Agreement (the "Card Agreement"), which sets forth the terms and conditions governing the Account. ((Defendant's Decl. ¶¶ 8-9, Ex. 2, ¶¶ 6-77.) In making her Demand against Citibank and relying on the Card Agreement, Plaintiff admits to the enforceability and applicability of the Arbitration Agreement, waives litigation of the underlying dispute, and waives Jury Trial.

///

///

///

**B.  The Arbitration Agreement**

The Arbitration Agreement states, in pertinent part, that either party may elect

mandatory binding arbitration as follows:

### ARBITRATION

### PLEASE READ THIS PROVISION OF THE AGREEMENT

### CAREFULLY.

This section provides that disputes may be resolved by binding

arbitration. Arbitration replaced the right to go to court, have a jury trial

or initiate or participate in a class action. In arbitration, disputes are

resolved by an arbitrator, not a judge or jury. Arbitration procedures are

simpler and more limited than in court. This arbitration provision is

governed by the Federal Arbitration Act (FAA), and shall be interpreted

in the broadest way the law will allow.

### Covered claims

- **You or we may arbitrate** any claim, dispute or controversy between

  you and us arising out of or related to your account, a previous related

  Account or our relationship (called "Claims").

- If arbitration is chosen by any party, neither you nor we will have the

  right to litigate that Claim in court or have a jury trial on that Claim.

  Except as stated below, all Claims are subject to arbitration, no matter

  what legal theory they're based on or what remedy (damages, or

injunctive or declaratory relief) they seek, including Claims based on

contract, tort (including intentional tort), fraud, agency, your or our

negligence, statutory or regulatory provisions, or any other sources of

law; Claims made as counterclaims, cross-claims, thirty-party claims,

interpleaders or otherwise; Claims made regarding past, present, or

future conduct; and Claims made independently or with other claims.

This also includes Claims made by or against anyone connected with us

or you or claiming through us or you, or by someone making a claim

through us or you, such as a co-application, authorized user, employee,

agent, representative or an affiliated/parent/subsidiary company.

(Ex. 2, ¶¶ 6-77.)

## C. <u>The Allegations Of The Complaint</u>

In the Complaint, Plaintiff asserts claims against Defendant The Moore Law

Group ("TMLG") for violation of the Fair Debt Collection Practices Act, 15 U.S.C §

1692 et seq. (the "FDCPA"), and California's Rosenthal Fair Debt Collection

Practices Act, Cal. Civ. Code § 1788, et seq.(the "Rosenthal Act"), based on

allegations regarding TMLG's efforts in seeking to collect the debt owed on

Plaintiff's Account. (Complaint ("Compl.") ¶ 2, ¶¶ 111-120 .) Plaintiff claims that

TMLG violated the FDCPA and Rosenthal Act when it attempted to collect on the

debt after it knew or should have known the debt was due to fraud. (*Id.*)

## III.     ARGUMENT

### A.     Plaintiff's Claims Must Be Arbitrated Under the Terms Of The Binding Arbitration Agreement Governing The Account.

#### 1.     Under the FAA, this Court must Compel Arbitration Pursuant to the Express Terms of the Arbitration Agreement.

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). The United States Supreme Court has made clear that arbitration agreements governed by the FAA must be enforced as written. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) ("The policy may be debatable but the law is clear: Congress has instructed that arbitration agreements like those before us must be enforced as written."). Further, it is well settled that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See e.g., Allied-Bruce TerminixCos., Inc. v. Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d

753 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). [1]

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; see also Perry, 482 U.S. at 490 (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'") (citations omitted).

Under the FAA, arbitration must be compelled where, as in this case: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. See *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). [2]The party resisting arbitration bears the burden of

---

[1] 1 Here, there is no question that the FAA applies because the underlying dispute at issue is between Plaintiff, a resident of California (Compl., ¶ 7), and Citibank, a national bank located in Sioux Falls, South Dakota. (Defendant's Decl. ¶ 3). Indeed, the Arbitration Agreement explicitly states that "[t]his arbitration provision is governed by the [FAA]." (Ex. 2.)

[2] The FAA preempts any state law impediments to enforcing arbitration agreements according to their terms, even under the guise of generally applicable contract principles. See *Concepcion*, 563 U.S. at 350-52 (holding that states may not superimpose judicial procedures on arbitration); id. at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.") (citing *Preston v. Ferrer*, 552 U.S.

showing that the arbitration agreement is invalid or does not encompass the claims at issue, a burden that cannot be met by Plaintiff on the facts stated herein. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). Indeed, the same Arbitration Agreement between Citibank and its customers has been enforced by multiple courts. See *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1198-99 (S.D. Cal. 2013); *Drozdowski v. Citibank, Inc.*, No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543, at *9-10 (W.D. Ten. Aug. 31, 2016); *McCormick v. Citibank, NA*, No. 15-CV-46-JTC, 2016 WL 107911, at *4-6 (W.D.N.Y. Jan. 8, 2016); *Carr v. Citibank, N.A.*, No. 15-CV-6993 (SAS), 2015 WL 9598797, at *3 (S.D.N.Y. Dec. 23, 2015); *Clookey v. Citibank, N.A.*, No. 8:14-CV-1318, 2015 WL 8484514, at *3-4 (N.D.N.Y. Dec. 9, 2015); *Snow v. Citibank, N.A.*, No. 5:14-CV-59-FL, 2015 WL 799543, at *5-6 (E.D.N.C. Feb. 25, 2015); *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1177 (N.D. Cal. 2012); *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1194- 97 (N.D. Cal. 2012); *Safadi v. Citibank, N.A.*, No. 12–1356 PSG, 2012 WL 4717875, at *3-5 (N.D. Cal. Oct. 2, 2012); *Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAx), 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012); *Conroy v. Citibank, N.A.*, No. CV 10-

346, 353, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008)); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ("[P]arties are 'generally free to structure their arbitration agreements as they see fit.'"); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (striking down California law that sought to insulate certain issues from arbitration).

MOTION TO STAY ACTION AGAINST DEFENDANT THE MOORE LAW GROUP, A PROFESSIONAL CORPORATION AND COMPEL ARBITRATION

04930 SVW (AJWx), 2011 WL 10503532, at *4-5 (C.D. Cal. Jul. 22, 2011). The same conclusion should be reached here.

## 2.   The Arbitration Agreement is Valid and Enforceable.

The Card Agreement relied upon by Plaintiff is expressly governed by South Dakota law.[3] While the FAA exclusively governs the enforceability of the Arbitration Agreement according to its terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists. *See Drozdowski*, 2016 WL 4544543, at *4 (enforcing South Dakota choice of law in Citibank Card Agreement); *Cayanan*, 928 F. Supp. 2d at 1193-94 (holding that South Dakota law applied under Citibank's choice of law provision and applicable choice of law test); *Ackerberg*, 898 F. Supp. 2d at 1176-77 (same); *Daugherty*, 847 F. Supp. 2d at 1193-95 (same); *Guerrero*, 2012 WL 7683512, at *8 (same); *see also Dinsmore v. Piper Jaffray, Inc*., 593 N.W.2d 41, 44, 1999 SD 56 (S.D. 1999) (noting that, "the question of whether the parties entered into a valid agreement to arbitrate is a question for the court to determine applying state contract law principles"); *accord First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including

---

[3] Pursuant to *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 470, 11 Cal. Rptr. 2d 330 (1992), and *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 914-15, 103 Cal. Rptr. 2d 320 (2001), the South Dakota choice-of-law provision is enforceable because: (i) South Dakota has a substantial relationship to the parties and the transaction (i.e., Citibank is located in South Dakota); and (ii) South Dakota law is not contrary to any fundamental public policy of California.

arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Here, there is no dispute that the Card Agreement applies to the Account. Plaintiff admits to the enforceability and applicability of the Card Agreement in relying on it to make Plaintiffs Demand in Arbitration against Citibank, N.A. Under South Dakota law, an implied contract is one in which the existence and terms are manifested by conduct. *Weller v. Spring Creek Resort, Inc.*, 277 NW2d 839, 841 (S.D. 1991.) In its use of the arbitration clause of the Card Agreement, Plaintiff manifests their assent to its terms. Accordingly, under both the FAA and governing South Dakota law, the Arbitration Agreement in the original Card Agreement is binding on Plaintiff and must be enforced.

3. **Plaintiff's Claims Fall Squarely within the Arbitration Agreement's Scope.**

Where the parties have entered into a binding arbitration agreement, as in the instant case, there is a strong presumption that any dispute between the parties is arbitrable. *See Moses H. Cone Mem'l Hosp*., 460 U.S. 1, 24-25 (1983). Therefore, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). "[A]ny

- 13 -

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high."). Where the clause is broad, as is the Arbitration Agreement here, there is a heightened presumption of arbitrability such that, "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. . . .'" *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).[4]

In the instant matter, the Arbitration Agreement extends to "any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related account or our relationship." (Ex. 2 at 15.) The Arbitration Agreement also covers "Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such

---

[4] *See also Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (holding that the terms such as "any disputes," "all claims," and disputes "arising from my enrollment" are broad in scope); *Simula, Inc.*, 175 F.3d at 721 (holding that "language 'arising in connection with' reaches every dispute between the parties having significant relationship to the contract and all disputes having their origin or genesis in the contract"); *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991)), as amended on denial of reh'g (Dec. 18, 1991) (noting that "presumption [of arbitrability] is particularly potent if the arbitration clause is broad.") (citation omitted); *see also Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable").

MOTION TO STAY ACTION AGAINST DEFENDANT THE MOORE LAW GROUP, A PROFESSIONAL
CORPORATION AND COMPEL ARBITRATION

as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company." (Id. at 16.) In addition, "all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law." (Id at 15-16.)

Here, Plaintiff's dispute against TMLG is predicated on the allegation that TMLG knew or should have known that the debt associated with the credit account in question was the result of fraud, that TMLG failed to review notes related to the Account, and attempts to collect on the debt associated with the Account by TMLG constituted misleading, unfair, and unconscionable actions under the FDCPA and Rosenthal. (Compl. ¶ 2, ¶¶ 111-120.) Regardless of their merits, the claims indisputably arise out of or are related to the Account and Plaintiff's relationship with Citibank, i.e., "but for" the Account and/or the relationship between Plaintiff and Citibank, there would be no credit account, no credit card, no allegedly fraudulent and disputed use of the card, no dispute or allegation of fraud made by Plaintiff to Citibank, no collection efforts, and no dispute as to either Citibank's alleged violations in Plaintiff's Demand or TMLG's alleged violations in the Complaint.

Hence, under the Arbitration Agreement's broad scope, the claims must be arbitrated. This, also, includes any claims predicated upon conduct by TMLG. As defined in the Arbitration Agreement, "Claims" includes all claims "made by or

against anyone connected with us [i.e., Citibank] or you or claiming through us or you, or by someone making a claim through us or you, such as a . . . agent. . .." (Ex. 2 at 16.) Thus, under the terms of the Arbitration Agreement, any claims "by or against" TMLG must also be arbitrated, as those claims too fall within the Arbitration Agreement's broad scope.

Finally, Plaintiff's legal theory falls within the scope of the Arbitration Agreement. Plaintiff's statutory claim is explicitly covered by the Arbitration Agreement, which expressly includes all claims, without regard to the legal theory pursued, including statutory claims. "It is by now clear that statutory claims may be the subject of an arbitration . . . ." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); *see also Drozdowski*, 2016 WL 4544543 at *8-9 (compelling TCPA claims to arbitration under Arbitration Agreement); *McCormick*, 2016 WL 107911 at *5-6 (same); *Carr*, 2015 WL 9598797, at *3; *Snow*, 2015 WL 799543, at *5-6 (same); *Coppock*, 2013 WL 1192632, at *5, 10 (compelling arbitration and explaining that the broad language in Citibank's "arbitration agreement clearly covers the TCPA"); *Cayanan*, 928 F. Supp. 2d at 1207-08 (compelling arbitration of TCPA claim under Citibank's Arbitration Agreement); *Galbraith v. Resurgent Capital Servs*., No. CIV S 05-2133 KJM, 2006 WL 2990163, at *1 (E.D. Cal. Oct. 19, 2006) (holding that Rosenthal Fair Debt Collection Practices Act claims are arbitrable).

4.   **The Arbitration Agreement Includes Claims Against**

**Citibank's Attorneys, TMLG**

The Arbitration Agreement would include TMLG, the attorneys for Citibank. An arbitration clause providing for the arbitration of disputes arising out of an agreement is construed broadly, to "reach[] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." (*Simula, Inc. v. Autoliv, Inc.* (9th Cir. 1999) 175 F.3d 716, 721; *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1004 (nonsignatory entitled to benefit of arbitration provision for breach of fiduciary duty and negligence causes of action based on his actions as the agent for the signatory); *see also Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418; *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 833 (under federal law, nonsignatory may compel signatory to arbitrate claims based on and intertwined with the contract containing an arbitration agreement); *Rowe v. Exline* (2007)153 Cal.App.4th 1276, 1287-88 (adopting for California the federal law, based on equitable estoppel principles, that a nonsignatory may compel arbitration for "[c]laims that reply upon, make reference to, or are intertwined with claims under the subject contract").).)  In this case, the arbitration clause covers "[c]laims made by or against anyone connected with us or you or claiming through us or you …, such as … agent, representative." (Ex. 2 at 15.) The claims against Defendant TMLG are necessarily included in that they have been sued as a result of an agency/attorney-

- 17 -

client relationship with Citibank. (*See Wolf v. Langemeier*, 2010 WL 3341823, at *10 (E.D. Cal. Aug. 24, 2010) (holding that non-signatories to a contract which includes an arbitration clause may enforce that clause when their claims are "sufficiently encompass[ed]" by the terms of the clause) (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)).)

### 5. Plaintiff Has Elected Arbitration of the Underlying Claims.

On or about March 10, 2022 Plaintiff filed and served a Demand For Arbitration through American Arbitration Association on Citibank, N.A. (the "Demand"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., the California Consumer Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code § 1785 et seq., and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ Code § 1788 et seq., against Citibank relating to Plaintiff's credit account. (Ex.1.) These claims relate to the Credit Account currently ending in 7204. The Card Agreement states "If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that claim." (Ex. 2 at 15.) Plaintiff in its Complaint alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C § 1692 et seq. (the "FDCPA"), and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, et seq.(the "Rosenthal Act"), based on allegations regarding TMLG's efforts in seeking to collect the debt owed on Plaintiff's Account. (Compl. ¶ 2, ¶¶ 111-120.)

Plaintiff claims that TMLG violated the FDCPA and Rosenthal Act when it attempted to collect on the debt after it knew or should have known the debt was due to fraud. (*Id.*) The allegations against TMLG are not separable from the allegations against Citibank, N.A., and are dependent on the actions taken by Citibank, N.A. such that but for the alleged actions by Citibank, N.A., the allegations against TMLG could not be true. In making her Demand for Arbitration against Citibank, N.A., Plaintiff admits to its validity and enforceability, including the preclusion clause, and is therefore barred from litigating its claims in Court or to have a jury trial on those claims.

### 6.   The Action Must be Stayed Pending Arbitration.

Under the FAA, the instant action should be stayed pending arbitration. *See* 9 U.S.C. § 3 (requiring the action be stayed "until such arbitration has been held" in accordance with the arbitration agreement); *see Collins v. Burlington N. R.R. Co*., (9th Cir. 1989) 867 F.2d 542, 545 (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement); *Rodriguez v. Am. Techs., Inc*., 136 Cal. App. 4th 1110, 1122 (2006) (holding that procedural aspects of the FAA, including Section 3 of the FAA, apply in California courts); *see also Lux v. Good Guys*, No. SACV 05-300-CJC ANX, 2005 WL 1713421, *2 (C.D. Cal. July 11, 2005) (granting motion to compel arbitration on individual basis and staying entire action pending completion of arbitration).

Accordingly, Court should order the instant matter stayed pending the resolution of arbitration.

## IV.      **CONCLUSION**

For the aforementioned reasons, TMLG respectfully requests that the Court grant its Motion and compel arbitration of Plaintiff's claims in accordance with the express terms of the valid and enforceable Arbitration Agreement governing Plaintiff's Account. In addition, this Court should stay the action against Defendant The Moore Law Group, A Professional Corporation, pending completion of arbitration proceedings.


DATED:      April 8, 2022          The Moore Law Group, A Professional Corporation

                                   By:    /s/ Harvey Moore

                                   Harvey Moore