O

# United States District Court
# Central District of California

| | |
|---|---|
| ALLISON ESTRADA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>THE MOORE LAW GROUP, APC, et al.,<br><br>　　　　　　　Defendants. | Case № 2:22-cv-01594-ODW (AFMx)<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION [14]** |

## I.  INTRODUCTION

Plaintiff Allison Estrada brings this action against Defendant The Moore Law Group, APC ("TMLG"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). (*See generally* Compl. ¶ 2, ECF No. 1.)  TMLG moves to compel Estrada to arbitrate her claims against it. (Mot. Compel ("Motion" or "Mot"), ECF No. 14.)  The Motion is fully briefed. (Opp'n Mot. Compel ("Opp'n"), ECF No. 23; Reply Mot. Compel ("Reply"), ECF No. 24; Suppl. ISO Opp'n ("Suppl."), ECF No. 31.)  For the reasons discussed below, the Court **DENIES** TMLG's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Estrada maintained a credit card with non-party Citibank, N.A., a national bank located in Sioux Falls, South Dakota. (*See* Compl. ¶ 40; Decl. Harvey Moore ("Moore Decl.") ¶ 3, ECF No. 14-2.) To activate that credit card, Estrada entered into a card agreement with Citibank. (Opp'n 3; Moore Decl. Ex. 2 ("Agreement"), ECF No. 14-2.) The Agreement contains an arbitration provision stating, in pertinent part:

> You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims"). If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that claim.

(Agreement 37.[2]) The arbitration provision continues:

> [A]ll Claims are subject to arbitration . . . includ[ing] Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative, or an affiliated/ parent/ subsidiary company.

(*Id.* ("Scope").) The Agreement also contains a "Governing Law" clause that reads, both "[f]ederal law and the law of South Dakota . . . govern the terms and enforcement of this Agreement." (*Id.* at 38.)

In March 2020, someone stole Estrada's wallet along with her Citibank credit card. (Compl. ¶¶ 35–40.) They used her Citibank card approximately 200 times, accruing a balance of $8,267.41. (*Id.* ¶ 41.) Estrada alleges that, despite Citibank knowing of the circumstances behind the charges, Citibank conducted no investigation, refused to remove the charges, and attempted to collect on the charges. (*Id.* ¶¶ 40–68.) After Citibank sued Estrada in the Superior Court of California, Estrada demanded Citibank arbitrate its claims against her, pursuant to the arbitration provision in the Agreement between her and Citibank. (*See* Moore Decl. Ex. 1 ("Arbitration Demand"), ECF No. 14-2.)

---

[2] Solely for the Agreement, the Court cites the pagination found in the CM/ECF header.

TMLG is a debt collection law firm located in Santa Ana, California. (Compl. ¶ 9.) Estrada alleges that Citibank retained TMLG to collect the purported debt owed to Citibank. (*Id.* ¶ 114.) Estrada further alleges that TMLG's debt collection attempts and methods were unlawful, and that TMLG should have known that Estrada did not owe a debt. (*Id.* ¶¶ 116–18.)

On March 9, 2022, Estrada brought this action against TMLG.[3] (*See* Compl.) TMLG moves to compel Estrada to arbitrate her claims against it, based on the arbitration provision in the Agreement. (*See generally* Mot.)

### III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4.

In deciding whether to compel arbitration, a court's inquiry is generally limited to "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

---

[3] Estrada also initially identified Trans Union LLC as a Defendant but has since settled with and dismissed Trans Union LLC from the case. (*See* Min. Order, ECF No. 28.)

The Supreme Court has repeatedly interpreted the FAA as reflecting "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). However, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (quoting *Buckner v. Tamarin*, 98 Cal. App. 4th 140, 142 (2002)). State contract law determines whether a nonsignatory may compel arbitration. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009) (recognizing that nonsignatory theories are "background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)" and therefore, are not altered by the FAA). Thus, "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

## IV.    DISCUSSION

The parties do not dispute that the Agreement and the arbitration provision are valid and enforceable as between Estrada and Citibank, or that South Dakota law governs the terms and enforcement of the Agreement. (*See* Reply 2, 5.) However, the parties do dispute whether TMLG, as a nonsignatory, may compel arbitration against Estrada, a signatory, under governing South Dakota law. TMLG argues that, because it is an "agent" of Citibank, it is covered under the scope of the arbitration provision and may therefore enforce the provision against Estrada. (Def.'s Mem. P. & A. ("Mem.") 14–18, ECF No. 14-1; Reply 2.)

"South Dakota treats the ability of agents to compel arbitration as a species of equitable estoppel." *Orn v. Alltran Fin., L.P.*, 779 F. App'x 996, 999 (3d Cir. 2019) (finding no freestanding "agency" theory in South Dakota law). Under South Dakota equitable estoppel principles, a nonsignatory may force a signatory to arbitrate in two circumstances. *White v. Sunoco, Inc.*, 870 F.3d 257, 264 (3d Cir. 2019). "The first is

when 'all the claims against the nonsignatory defendants are based on alleged substantially interdependent and concerted misconduct by both the nonsignatories and one or more of the signatories to the contract.'" *Id.* (quoting *Rossi Fine Jewelers, Inc. v. Gunderson*, 2002 SD 82, 648 N.W.2d 812, 815). The second is when the signatory plaintiff "asserts 'claims arising out of agreements against nonsignatories to those agreements without allowing those defendants also to invoke the arbitration clause contained in the agreements.'" *Id.* (quoting *Rossi*, 648 N.W.2d at 815).

### A.  Substantially Interdependent and Concerted Misconduct

In *Rossi*, the Supreme Court of South Dakota held that nonsignatories to an arbitration agreement could compel arbitration against a plaintiff where the plaintiff alleged "substantially interdependent and concerted misconduct" between the nonsignatory and signatory to the agreement. 648 N.W.2d at 815–16. However, the court in *Rossi* failed to precisely define this "concerted-misconduct" test, leaving courts without a clear standard as to when a plaintiff's claims qualify as alleging "interdependent" and "concerted" misconduct under South Dakota law. Therefore, the Court must look to "decisions from other jurisdictions" addressing this question under South Dakota law, and "predict how the highest state court would decide the issue." *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996).

Many jurisdictions have adopted the concerted-misconduct test when considering compelling arbitration under equitable estoppel principles. For instance, in *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947–48 (11th Cir. 1999), the Eleventh Circuit applied this test and compelled the plaintiff to arbitrate its claims, when the plaintiff alleged the signatory and nonsignatory conspired to commit fraud. In contrast, in *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726 (8th Cir. 2009), the Eighth Circuit examined Mississippi equitable estoppel doctrine, which uses the same language as South Dakota's doctrine, and held that the plaintiff's allegations of shared misconduct were insufficient to allow the nonsignatory-defendant to compel the signatory-plaintiff to arbitrate. *Id.* at 734. The court applied

the concerted-misconduct test to examine the plaintiff's claims and observed that the plaintiff did not allege the signatory and nonsignatory "'knowingly acted in concert,' 'improperly cooperated,' or 'worked hand-in-hand.'" *Id.*; *see also Pacanowski v. Alltran Fin.*, 271 F. Supp. 3d 738, 748 (M.D. Pa. 2017) (applying *Donaldson* to South Dakota equitable estoppel doctrine). Perhaps most convincingly, in *White*, a case involving Citibank as a nonparty signatory and applying South Dakota law, the Third Circuit held that the nonsignatory-defendant could not compel arbitration because the signatory-plaintiff did not allege the defendant and Citibank conspired to commit fraud. 870 F.3d at 264–65. Although these decisions are not binding here, the Court is persuaded that jurisprudence favors this interpretation of the concerted-misconduct test under circumstances similar to those in this case. Thus, the Court predicts that the South Dakota Supreme Court would apply the concerted-misconduct test consistent with these authorities.

Applying this interpretation of the concerted-misconduct test, the Court finds that Estrada does not allege "substantially interdependent and concerted misconduct" between Citibank and TMLG under South Dakota equitable estoppel law. Estrada alleges that both Citibank and TMLG knew or should have known that Estrada did not owe the debt they each attempted to collect. (Compl. ¶ 118.) Estrada also asserts that both Citibank and TMLG violated the RFDCPA in their attempts to collect from her. (*See* Reply 2.) However, the presence of allegations common to both the signatory and nonsignatory is not enough to satisfy the concerted-misconduct test. *See Donaldson*, 581 F.3d at 734. More significantly, Estrada does *not* allege, nor can the Court infer from her allegations, that TMLG worked *in concert* with Citibank to unlawfully collect the debt. That she asserts an RFDCPA claim against Citibank in the arbitration and against TMLG here does not necessarily imply that TMLG "'knowingly acted in concert,' 'improperly cooperated,' or 'worked hand-in-hand'" with Citibank. *See id.*; *see also* Cal. Civ. Code § 1788.30 (listing circumstances where

a debt collector is liable to a debtor under the RFDCPA, none of which require the creditor's liability).

TMLG contends, without citation to authority, that the Court should apply a "but for" test in evaluating Estrada's claims against it. (Mem. 6, 15, 19.) Although TMLG is correct that Estrada would not have claims against TMLG "but for" the debt dispute between Estrada and Citibank, this simple causation is irrelevant to whether TMLG may force Estrada to arbitrate. The concerted-misconduct test does not involve causation, but rather, considers whether a plaintiff is asserting claims against a nonsignatory that also implicate the signatory. *See Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1013–14 (10th Cir. 2021) (compelling arbitration against the plaintiff because the plaintiff alleged the nonsignatory failed to pay plaintiff's wages, and such allegations necessarily implicated the signatory who actually paid the plaintiff). By permitting a nonsignatory-defendant to compel arbitration under these circumstances, courts prevent plaintiffs from "avoid[ing] the arbitration for which they had contracted simply by adding a nonsignatory defendant." *White*, 870 F.3d at 264 (alteration omitted). Here, however, Estrada's claims against TMLG are independent of her claims against Citibank, and the Court finds no reason to believe that Estrada is improperly avoiding arbitration with TMLG.

Finally, TMLG contends that Estrada's allegations against it are "not separable" from, and are "dependent on," Estrada's allegations against Citibank in the arbitration. (Mem. 19.) However, these thin conclusions lack analysis or citation to authority, and the Court is unconvinced that Estrada's claims against TMLG and Citibank are inseparable or interdependent. Estrada does not assert the same allegations against TMLG and Citibank. She alleges that TMLG did not follow reasonable procedures that would have led TMLG to conclude that Estrada did not owe a debt. (Suppl. 2–3.) In contrast, Estrada alleged that Citibank, *despite having notice and evidence* that Estrada did not owe a debt, nevertheless continued to attempt to collect the debt. (*Id.*

at 3.) Further, Citibank's liability is irrelevant to Estrada's claims against TMLG, as Estrada alleges here that TMLG independently violated its own RFDCPA obligations.

Therefore, the Court finds that Estrada does not allege "substantially interdependent and concerted misconduct" such as would allow TMLG to enforce the arbitration provision against her.

## B. Claims Arising Out of the Agreement

The second circumstance where courts may permit a nonsignatory to compel a signatory to arbitration occurs when the plaintiff's claims "arise out of" the agreement. *Rossi*, 648 N.W.2d at 815. Applying the same "arise out of" language as that in *Rossi*, the Ninth Circuit in *Kramer* held that the nonsignatory-defendant could *not* compel the signatory-plaintiff to arbitration, because the plaintiff's claim "ar[ose] independently from the [agreement], rather than intimately relying on [it]." 705 F.3d at 1131. Thus, under South Dakota law, "a plaintiff-signatory cannot have his cake (use the agreement against the non-signatory) and eat it too (avoid enforcement of the arbitration clause within the agreement)." *White*, 870 F.3d at 264 (interpreting South Dakota equitable estoppel principles).

Here, Estrada does not rely on the Agreement in making her claims, and therefore, her claims against TMLG do not "arise out of" the Agreement. Once again, TMLG is correct that Estrada would not have claims against TMLG "but for" the Agreement between Estrada and Citibank. But TMLG's causation arguments remain unpersuasive. "[I]t is not enough that the [Agreement] is factually significant to [Estrada's] claims or has a 'but-for' relationship with them." *See Lenox Maclaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011) (applying South Dakota equitable estoppel). Nowhere does the Agreement impose on TMLG a duty to "review [Estrada's] account notes" before collecting on the debt. (*See* Compl. ¶ 117; *see generally* Agreement.) The Agreement imposes no duty on TMLG at all, and Estrada does not even reference the Agreement in her allegations against TMLG. Rather, to state her claims against TMLG, Estrada relies solely on TMLG's

obligations pursuant to the RFDCPA and FDCPA and TMLG's debt collection practices. (*See* Compl. ¶¶ 116–18.) As such, Estrada's claims against TMLG do not "arise out of" the Agreement.

Finally, TMLG points to the "Scope" clause of the arbitration provision to argue that the provision encompasses Estrada's claims against it. (Mem. 14–15.) However, TMLG "confuses the *nature* of the claims covered by the arbitration clause with the question of *who can compel* arbitration." *See White*, 870 F.3d at 267 (emphasis added). TMLG is not a signatory to the Agreement, and therefore must "show that it is entitled to compel arbitration through an applicable nonsignatory theory." *Glassburg v. Ford Motor Co.*, No. 2:21-cv-01333-ODW (MAAx), 2021 WL 5086358, at *2 (C.D. Cal. Nov. 2, 2021) (citing *Kramer*, 705 F.3d at 1126). It fails to do so.[4]

The Court finds that Estrada's claims do not arise out of the Agreement's arbitration provision. As Estrada does not allege that TMLG and Citibank engaged in substantially interdependent and concerted misconduct, TMLG fails to establish that it may compel Estrada to arbitrate her claims against TMLG.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** TMLG's Motion to Compel Arbitration. (ECF No. 14.)

**IT IS SO ORDERED.**

July 11, 2022

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

---

[4] The Court finds TMLG's remaining arguments equally unpersuasive or frivolous.